STATE OF RHODE ISLAND
WASHINGTON, S.C.

SUPERIOR COURT

JOHN SMYTH and
CYNTHIA SMYTH,

Plaintiffs,

VS.

C.A. NO. WC-2008-0080

GENERAL ELECTRIC COMPANY,
GE HEALTHCARE, INC.,
GE HEALTHCARE BIO-SCIENCES
CORP., RHODE ISLAND HOSPITAL
and THE MIRIAM HOSPITAL,

Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiffs, John Smyth and Cynthia Smyth, by this Complaint and Jury Demand against the defendants, allege the following:

## PARTIES, VENUE AND JURISDICTION

1. Plaintiff, John Smyth, is a resident and citizen of Wakefield, Washington County, and State of Rhode Island.

2. Plaintiff, Cynthia Smyth, is a resident and citizen of Wakefield, Washington County, and State of Rhode Island and, at all relevant times and to the present, was and is the wife of John Smyth.

3. Defendant, General Electric Company, is a New York corporation with its principal place of business at 3135 Easton Turnpike, Fairfield, Connecticut 06431. Defendant, General Electric Company, is a resident and citizen of both New York and Connecticut. Defendant, General Electric Company, is the parent company of Defendant, GE Healthcare, Inc. and Defendant, GE Healthcare Bio-Sciences Corp.

4. At all relevant times, defendant, General Electric Company, was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription drug Omniscan.

5. Defendant, GE Healthcare, Inc., is a Delaware corporation with its principal place of business at 101 Carnegie Center, Princeton, New Jersey. Defendant, GE Healthcare, Inc., is a resident and citizen of both Delaware and New Jersey. Defendant, GE Healthcare, Inc., is a subsidiary of General Electric Company.

6. At all times relevant, defendant, GE Healthcare, Inc., was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription drug Omniscan.

7. Defendant, GE Healthcare Bio-Sciences Corp., is a Delaware corporation with its principal place of business at 800 Centennial Avenue, Piscataway, New Jersey. Defendant, GE Healthcare Bio-Sciences Corp. is a resident and citizen of both the State of Delaware and the State of New Jersey. Defendant, GE Healthcare Bio-Sciences Corp. is a subsidiary of General Electric Company.

8. At all times relevant, defendant, GE Healthcare Bio-Sciences Corp. was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the drug Omniscan.

9. Defendant, Rhode Island Hospital, is a Rhode Island Domestic Non-Profit corporation with its principal place of business at 593 Eddy Street, Providence Rhode

Island 02903 that, at all relevant times, operated a hospital to care for the sick, disabled and injured.

10. Defendant, The Miriam Hospital ("Miriam Hospital"), is a Rhode Island Domestic Non-Profit corporation with its principal place of business at 164 Summit Avenue, Providence Rhode Island 02906 that, at all relevant times, operated a hospital to care for the sick, disabled and injured.

11. Defendants, General Electric Company, GE Healthcare, Inc. and GE Healthcare Bio-sciences Corp. (collectively referred to as the "GE defendants"), have the requisite minimum contacts with the State of Rhode Island, pursuant to R.I.G.L. §9-5-33, in order for the plaintiffs to maintain this action against these entities.

12. Venue in this County is appropriate because plaintiffs John Smyth and Cynthia Smyth are residents of Washington County.

13. Omniscan is an injectable paramagnetic contrast agent for magnetic resonance imaging and arteriography. It contains the metal gadolinium which is highly toxic in its free state. Omniscan's chemical name is gadolinium diethylenetriamine pentaacetic acid bismethylamide (gadodiamide), and is represented by the GE defendants to be safely and effectively indicated for intravenous administration to facilitate the visualization of lesions with abnormal vascularity.

14. Omniscan (gadodiamide) was originally developed in the early 1990s by Salutar, Inc. which subsequently transferred the rights to Omniscan (gadodiamide) to Sterling Winthrop, a subsidiary of Eastman Kodak Company.

15. In 1994, the diagnostic imaging division of Sterling Winthrop, which held the rights of Omniscan (gadodiamide), was sold to Hafslund Nycomed AS, a Norwegian company.

16. In 1997, Nycomed merged with Amersham International, a British company, and the resulting entity that held the rights to Omniscan (gadodiamide) was Amersham PLC.

17. In January 2004, defendant, General Electric, purchased Amersham PLC, combined it with its own GE Medical Systems, and created a new subsidiary called GE Healthcare, Inc.

18. Omniscan (gadodiamide) is cleared from the body by glomerular filtration in the kidneys. As a result, it has a prolonged half-life in patients with renal insufficiency and who, therefore, are at increased risk for adverse health effects in connection with the administration of Omniscan (gadodiamide).

19. In a pre-clinical safety assessment during which Omniscan (gadodiamide) was injected into laboratory animals, consistent patterns of toxicity, including nephrogenic fibrotic changes in the skin and other body organs, occurred.

20. Despite these nephrogenic fibrotic changes and other data warranting caution and further evaluation, Omniscan (gadodiamide) was marketed and sold without appropriate clinical evaluation of the nephrotoxic effect of this drug on patients with renal insufficiency, without appropriate clinical evaluation of the propensity of this drug to produce nephrogenic fibrosis in humans, and without appropriate and effective warnings with respect to either potential harm.

21. At all relevant times, the GE defendants knew or should have known about the significant health risk of Omniscan (gadodiamide) administration to patients with renal insufficiency, including, but not limited to, the risk of nephrogenic fibrosis in the skin and other body organs.

22. Nephrogenic Systemic Fibrosis (NSF), also known as Nephrogenic Fibrosing Dermopathy (NFD), has been reported in the medical literature for at least the last decade and specifically reported in the medical literature by the name NFD since October, 2001.

23. Prior to a decade ago, the group of symptoms now known as NSF/NFD had been variously described as scleromyxedema, scleroderma, or other connective tissue diseases. Regardless of the name as given to it, however, it has always been the case that this clinical entity now known as NSF/NFD develops only in patients with renal insufficiency who have been given an injection of a gadolinium-type contrast agent such as Omniscan (gadodiamide). The association of acute renal disease and NFS/NFD has been recognized and discussed in the medical literature since approximately October, 2003.

24. While there are several gadolinium-type paramagnetic contrast agents available for administration in the United States, greater than 90% of all patients who have been diagnosed with NSF/NFD have received injections of Omniscan (gadodiamide) in connection with magnetic resonance imaging or arteriography.

25. Omniscan (gadodiamide) is chemically distinct from other gadolinium-type contrast agents, in that it carries no molecular charge and is arranged in a linear

structure with excess chelate such that it permits the release of free gadolinium ions and the extravasation of toxic gadolinium.

26. NSF/NFD is predominantly characterized by discoloration, thickening, tightening, and swelling of the skin within days or weeks after receiving an Omniscan (gadodiamide) injection. These fibrotic and edematous changes produce muscular weakness and inhibit flexion and extension of joints, resulting in contractures. NSF/NFD often progresses to painful inhibition of the ability to use the arms, legs, hands, feet, and other joints. The skin changes that begin as darkened patches or plaques progress to a "woody" texture and are accompanied by burning, itching, or severe pain in the areas of involvement. NSF/NFD also progresses to a fibrotic or scarring condition of other body organs such as the lungs, heart, liver, and musculature, that can inhibit their ability to function properly and may lead to death. NSF/NFD is a progressive disease as to which there is no known cure.

27. Until May, 2007, the GE defendants have consistently failed to place "black box" warnings on its product packages warning consumers and/or their health care providers that NSF/NFD could result when Omniscan (gadodiamide) is administered to patients with renal insufficiency.

28. During the years that the GE defendants have manufactured, marketed, and sold Omniscan (gadodiamide), there have been numerous case reports, studies, assessments, papers, and other clinical data that have described and/or demonstrated NSF/NFD in connection with the use of Omniscan (gadodiamide). Despite this knowledge, defendants have repeatedly failed to revise their package inserts, Material Safety Data Sheets, and other product-related literature, and to issue appropriate post-

marketing communications in order to convey adequate warnings to health care providers and their patients.

29. In June 2006, the Food and Drug Administration ("FDA") issued a Public Health Advisory Alert concerning the development of serious, sometimes fatal, NSF/NFD following exposure to gadolinium-based contrast agents, including Omniscan (gadodiamide).

30. The GE defendants have repeatedly and consistently failed to advise consumers and/or their health care providers of the causal relationship between Omniscan (gadodiamide) and NSF/NFD in patients with renal insufficiency.

31. The GE defendants have failed to take prompt, reasonable, and effective measures to alert the appropriate members of the health care community and its patients, including, but not limited to, renal patients, patients suffering from acute renal failure or chronic renal insufficiency, nephrologists and other physicians, radiologists, administrators, technicians, and hospital/radiology supply personnel, to the serious adverse health risks presented by Omniscan (gadodiamide) administration.

32. As a result of the GE defendants' claim regarding the safety and effectiveness of Omniscan (gadodiamide), plaintiff, John Smyth, in the course of being evaluated and treated for spinal abscesses was administered 20cc of Omniscan (gadodiamide) on or about September 10, 2006, September 27, 2006, and November 3, 2006, in connection with magnetic resonance imaging (MRI) studies performed at Rhode Island Hospital and Miriam Hospital. At the time of the administration of the Omniscan (gadodiamide), John Smyth was suffering from acute renal failure and then chronic renal insufficiency.

33. Plaintiff, John Smyth, was never warned or cautioned by the GE defendants, Rhode Island Hospital, or Miriam Hospital about the serious health risks presented by the administration of Omniscan (gadodiamide) to him while he was suffering from renal insufficiency.

34. Upon information and belief, John Smyth's prescribing physicians, the performing radiologists and technicians claim that they were never warned or cautioned by the GE defendants about the serious health risks presented by the administration of Omniscan (gadodiamide) to a patient suffering from renal insufficiency.

35. Within a few weeks after being administered Omniscan (gadodiamide), plaintiff John Smyth began exhibiting the symptoms and signs of NSF/NFD.

36. John Smyth's NSF/NFD symptoms progressed to the point where, on November 3, 2006, he was transferred by ambulance from the Pawtuxet Village Nursing Home to Miriam Hospital where, on November 10, 2006, John Smyth was formally diagnosed with NSF/NFD. At this time, he was extremely rigid, had altered mental status, was vomiting and suffering from back pain.

37. Notwithstanding John Smyth's presentation as described in the preceding paragraph, on November 3, 2006, Miriam Hospital, through its actual and apparent agents, servants and employees, administered 20 cc of Omniscan (gadodiamide) to John Smyth in connection with MRI's of all three segments of his spine and his brain.

38. As his NSF/NFD symptoms and signs progressed, John Smyth developed pain, itching and burning sensations, as well as swollen, tight and hardened, bluish-red discolored skin of the bilateral upper and lower extremities. He also experienced fibrosis

and decreased range of motion in the joints of his ankles, knees, elbows and wrists. He has difficulty ambulating due to joint contractures.

39. As a direct and proximate result of the administration of Omniscan (gadodiamide), plaintiff, John Smyth, has suffered serious, progressive, incurable, and potentially fatal injuries that have caused him great pain and suffering, medical expenses, and loss of enjoyment of life.

40. Prior to September 10, 2006, the GE defendants knew or should have known that the administration of Omniscan (gadodiamide) to patients with renal insufficiency created an increased risk to those consumers of serious personal injury and even death.

41. Therefore, at the time plaintiff, John Smyth, was administered Omniscan (gadodiamide) in September, 2006, the GE defendants knew or should have known that the use of Omniscan (gadodiamide) created an increased risk of serious personal injury, or even death to consumers with renal insufficiency.

42. Despite the fact that the GE defendants knew or should have known of the serious health risks associated with the use of Omniscan (gadodiamide), the GE defendants failed to warn plaintiff, John Smyth, and/or his health care providers of those serious risks.

43. Had plaintiff, John Smyth, and/or his health care providers known the risks of damages associated with Omniscan (gadodiamide), he would not have been administered Omniscan (gadodiamide) and would not have been afflicted with NSF/NFD.

44. As a direct and proximate result of plaintiff, John Smyth's, being administered Omniscan (gadodiamide), he has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment, including, but not limited to, suffering from NSF/NFD, which may have caused permanent effects, and which may continue in the future to cause him physical effects and damage which will affect him throughout his lifetime, and may lead to death.

45. Further, as a direct and proximate result of his being administered Omniscan (gadodiamide), plaintiff, John Smyth, suffered significant mental anguish and emotional distress and loss of enjoyment of life and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

46. Plaintiff, John Smyth, has also incurred medical expenses and other economic harm and will continue to incur such expenses in the future, as a direct and proximate result of his being administered Omniscan (gadodiamide).

**<u>COUNT I – GE DEFENDANTS</u>**
**Strict Products Liability**
**Defective Manufacturing**

47. Plaintiffs hereby incorporate by reference, as if fully set out herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

48. Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Omniscan (gadodiamide).

49. The Omniscan (gadodiamide) manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by the GE Defendants was defective in its manufacture and construction when it left the hands of the GE defendants in that it deviated from product specifications, posing a serious risk of injury and death.

50. As a direct and proximate result of plaintiff, John Smyth's, being administered Omniscan (gadodiamide) as manufactured, designed, sold, supplied and introduced into the stream of commerce by the GE defendants, he has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**COUNT II – GE DEFENDANTS**
**Strict Products Liability**
**Design Defect**

51. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

52. The GE defendants are the manufacturers, designers, distributors, sellers, or suppliers or Omniscan (gadodiamide).

53. The Omniscan (gadodiamide) manufactured and supplied by defendants was defective in design or formulation in that, when it left the hands of the defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect.

54. The foreseeable risks associated with the design or formulation of Omniscan (gadodiamide), include, but are not limited to, the fact that the design or formulation of Omniscan (gadodiamide) is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

55. As a direct and proximate result of plaintiff, John Smyth's, being administered Omniscan (gadodiamide) as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by the GE Defendants, he has

suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**COUNT III – GE DEFENDANTS**
**Strict Products Liability**
**Defect Due to Inadequate Warning**

56. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

57. The Omniscan (gadodiamide) manufactured and supplied by defendants was defective due to an inadequate warning or instruction because defendants knew or should have known that the product created significant risks of serious bodily harm and death to consumers and they failed to adequately warn consumers and/or their health care providers of such risks.

58. The Omniscan (gadodiamide) manufactured and supplied by defendants was defective due to inadequate post-marketing warning or instruction because, after defendants knew or should have known of the risk of serious bodily harm and death from the administration of Omniscan (gadodiamide), defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

59. As a direct and proximate result of plaintiff, John Smyth's, being administered Omniscan (gadodiamide) as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by defendants, he has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**COUNT IV – GE DEFENDANTS**
**Strict Products Liability**
**Defect Due to Nonconformance with Representations**

60. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

61. The GE defendants are the manufacturers, designers, distributors, sellers or suppliers of Omniscan (gadodiamide) and made representations regarding the character or quality of Omniscan (gadodiamide), including representations that Omniscan (gadodiamide) was safe.

62. The Omniscan (gadodiamide) manufactured and supplied by defendants was defective in that, when it left the hands of the GE defendants, it did not conform to representations made by defendants concerning the product.

63. Plaintiff, John Smyth, and/or his health care providers justifiably relied upon the GE defendants' representations regarding the Omniscan (gadodiamide) at the time it was administered to him.

64. As a direct and proximate result of plaintiff, John Smyth's, being administered Omniscan (gadodiamide) and the reliance on defendants' representations regarding the character and quality of Omniscan (gadodiamide), he has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**COUNT V – GE DEFENDANTS**
**Strict Products Liability**
**Defect Due to Failure to Adequately Test**

65. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

66. The GE defendants advised consumers and the medical community that Omniscan (gadodiamide) was safe for its intended use. However, the GE defendants failed to adequately test Omniscan (gadodiamide) with respect to its use by consumers with renal insufficiency.

67. Had defendants adequately tested the safety of Omniscan (gadodiamide) for use by consumers with renal insufficiency and disclosed those results to the medical community or to the public, plaintiff, John Smyth, would not have been administered Omniscan (gadodiamide) and would not have contracted NSF/NFD.

68. As a direct and proximate result of the GE defendants' failure to adequately test the safety of Omniscan (gadodiamide) and as a direct and proximate result of plaintiff, John Smyth, being administered Omniscan (gadodiamide) as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by defendants, plaintiff, John Smyth, has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**COUNT VI – GE DEFENDANTS**
**Strict Liability in Tort**

69. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

70. Defendants used and controlled toxic gadolinium for injection in humans.

71. Gadolinium is highly toxic, inherently dangerous, and ultrahazardous to humans.

72. Defendants allowed and directed that toxic gadolinium be used and injected in humans.

73. As a direct and proximate result of defendants' use and control of toxic gadolinium, toxic gadolinium was injected and released into the body of plaintiff, John Smyth, and he has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

74. Defendants are strictly liable for plaintiffs' injuries, damages and losses.

**COUNT VII – GE DEFENDANTS**
**Negligence – Highest Possible Duty of Care**

75. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

76. Because gadolinium is highly toxic and inherently dangerous and ultrahazardous to humans, defendants had a duty to exercise the highest possible degree of care in the design, manufacture, sale and/or distribution of Omniscan (gadodiamide) into the stream of commerce, including the duty to assure that their product did not pose a significantly increased risk of bodily harm and adverse events.

77. Defendants failed to exercise the highest possible degree of care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, and distribution of Omniscan (gadodiamide) into interstate commerce in that defendants knew or should have known that the product was inherently dangerous and ultrahazardous to humans and cause such significant bodily harm or death and was not safe for administration to consumers.

78. Defendants also failed to exercise the highest possible degree of care in the labeling of Omniscan (gadodiamide) and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Omniscan (gadodiamide).

79. Despite the fact that defendants knew or should have known that Omniscan (gadodiamide) posed a serious risk of bodily harm to consumers and was inherently dangerous and ultrahazardous to humans and particularly those with renal insufficiency, defendants continued to manufacture and market Omniscan (gadodiamide) for administration to magnetic resonance imaging and arteriography patients with renal insufficiency.

80. Defendants knew or should have known that consumers such as plaintiff John Smyth would suffer injury as a result of defendants' failure to exercise the highest possible degree of care as described above.

81. As a direct and proximate result of defendants' negligence, plaintiff John Smyth, has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**COUNT VIII – GE DEFENDANTS**
**Negligent Design**

82. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

83. Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of Omniscan (gadodiamide) into the stream of commerce, including a duty to assure that their product did not pose a significantly increased risk of bodily harm and adverse events.

84. Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, and distribution of Omniscan (gadodiamide) into interstate commerce in that defendants knew

or should have known that the product caused such significant bodily harm or death and was not safe for administration to consumers.

85. Defendants also failed to exercise ordinary care in the labeling of Omniscan (gadodiamide) and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Omniscan (gadodiamide).

86. Despite the fact that defendants knew or should have know that Omniscan (gadodiamide) posed a serious risk of bodily harm to consumers, defendants continued to manufacture and market Omniscan (gadodiamide) for administration to magnetic resonance imaging and arteriography patients with renal insufficiency.

87. Defendants knew or should have known that consumers such as plaintiff, John Smyth, would foreseeably suffer injury as a result of defendants' failure to exercise ordinary care as described above.

88. As a direct and proximate result of defendants' negligence, plaintiff, John Smyth, has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**COUNT IX – GE DEFENDANTS**
**Breach of Express Warranty**

89. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

90. Defendants expressly warranted that Omniscan (gadodiamide) was a safe and effective paramagnetic contrast agent for magnetic resonance imaging.

91. The Omniscan (gadodiamide) manufactured and sold by defendants did not conform to these express representations because it caused serious injury to consumers when administered in recommended dosages.

92. As a direct and proximate result of defendants' breach of warranty, plaintiff, John Smyth, has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**COUNT X – GE DEFENDANTS**
**Breach of Implied Warranty**

93. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

94. At the time defendants designed, manufactured, marketed, sold, and distributed Omniscan (gadodiamide), defendants knew of the use for which Omniscan (gadodiamide) was intended and impliedly warranted the product to be of merchantable quality and safe for such use.

95. Plaintiff, John Smyth, reasonably relied upon the skill and judgment of defendants as to whether Omniscan (gadodiamide) was of merchantable quality and safe for its intended use and upon defendants' implied warranty as to such matters.

96. Contrary to such implied warranty, Omniscan (gadodiamide) was not of merchantable quality or safe for its intended use because the product was unreasonably dangerous as described above.

97. As a direct and proximate result of defendants' breach of warranty, plaintiff, John Smyth, has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**COUNT XI – GE DEFENDANTS**
**Fraud/Misrepresentation**

98. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

99. Defendants knowingly and intentionally made material and false and misleading representations to plaintiff, John Smyth, his health care providers and to the public that Omniscan (gadodiamide) was safe for use and that defendants' labeling, marketing and promotion fully described all known risks of the product.

100. Defendants' representations were in fact false, as Omniscan (gadodiamide) is not safe for use and its labeling, marketing and promotion did not fully describe all known risks of the product.

101. Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Omniscan (gadodiamide) created an unreasonable risk of serious bodily injury and death to consumers, or in the exercise of due care, should have known of such information.

102. Defendants knowingly and intentionally omitted this information in their product labeling, marketing, and promotion and instead, labeled, promoted and marketed their product as safe for use in order to avoid monetary losses and in order to sustain profits in its sales to consumers.

103. When defendants made these representations that Omniscan (gadodiamide) was safe for use, it knowingly and intentionally concealed and withheld from plaintiff, John Smyth, his physician and the public the true facts that Omniscan (gadodiamide) is not safe for use in consumers with renal insufficiency.

104. Defendants had a duty to disclose to plaintiff, John Smyth, his physician and the public that Omniscan (gadodiamide) was not safe for use in patients with renal insufficiency in that it causes NSF/NFD because it had superior knowledge of these facts that were material to plaintiff and his health care provider's decision to use Omniscan (gadodiamide).

105. Plaintiff, John Smyth, the hospitals at which he treated and their physicians and technicians, as well as John Smyth's physicians, reasonably and justifiably relied on the defendants' concealment of the true facts and reasonably and justifiably relied upon defendants' representations to plaintiff, John Smyth, and/or his health care providers that Omniscan (gadodiamide) was safe for human consumption and/or use and that defendants' labeling, marketing and promotion fully described all known risks of the product.

106. Had plaintiff, John Smyth, the hospitals at which he treated and their physicians and technicians, as well as John Smyth's physicians, known of defendants' concealment of the true facts that Omniscan (gadodiamide) was not safe for human use, plaintiff, John Smyth, would not have been administered Omniscan (gadodiamide).

107. As a direct and proximate result of defendants' misrepresentations and concealment, plaintiff, John Smyth, was administered Omniscan (gadodiamide) and has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**<u>COUNT XII – GE DEFENDANTS</u>**
**Negligent Misrepresentation**

108. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

109. Defendants, in the course of its business profession, supplied plaintiff, John Smyth, and his health care providers with false information for guidance in their decision to use Omniscan (gadodiamide) in connection with conducting MRI studies of his spine and brain.

110. The false information supplied by defendants to plaintiff, John Smyth, and his health care providers was that Omniscan (gadodiamide) was safe and would not adversely affect plaintiff's health.

111. In supplying the false information, defendants failed to exercise reasonable care or competence in obtaining or communicating information to plaintiff, John Smyth, and his health care providers.

112. The false information obtained and communicated by defendants to plaintiff, John Smyth, and his health care providers was material and they justifiably relied in good faith on the information to their detriment.

113. As a result of the negligent misrepresentation of defendants, plaintiff, John Smyth, suffered injuries, damages and losses as alleged herein.

**COUNT XIII**
**Negligence – Rhode Island Hospital**

114. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

115. As of the time that John Smyth was admitted on September 10, 2006, Rhode Island Hospital, its agents, servant and employees including, but not limited to, its physicians, radiologists, administrators, technicians, and hospital/radiology supply personnel, (collectively referred to as "Rhode Island Hospital") knew, or should have known, in the exercise of reasonable care, that the administration of gadolinium-based

contrast agents, including Omniscan (gadodiamide), to patients with renal insufficiency, posed a foreseeable risk of that patient developing the serious, incurable disease known as NSF/NFD.

116. Rhode Island Hospital, owed a duty to its patients, such as John Smyth, with renal insufficiency who were candidates for the administration of gadolinium-based contrast agents, including Omniscan (gadodiamide), to take prompt, reasonable, and effective measures to alert the appropriate members of its health care community and its patients, including, but not limited to, renal patients, patients suffering from acute renal failure or chronic renal insufficiency, nephrologists and other physicians, radiologists, administrators, technicians, and hospital/radiology supply personnel, to the serious adverse health risks presented by Omniscan (gadodiamide) administration. These measures included, but are not limited to, keeping current on the medical literature, implementing procedures, guidelines, warnings and protocols that would have prohibited the administration of Omniscan (gadodiamide) to patients with renal insufficiency like John Smyth, not only once, but at least twice.

117. Notwithstanding the fact that Rhode Island Hospital knew, or should have known, of the foreseeable risks described above, Rhode Island Hospital, its agents, actual and apparent, servants, and employees breached their duty of care to John Smyth by failing to (a) timely and properly alert the nephrologists and other physicians, radiologists, administrators, technicians, and hospital/radiology supply personnel, as to the serious adverse health risks presented by Omniscan (gadodiamide) administration; (b) warn John Smyth about the serious health risks presented by the administration of Omniscan (gadodiamide); and (c) implement procedures, guidelines and protocols that

would have prohibited the administration of gadolinium-based contrast agents, including Omniscan (gadodiamide), to patients like John Smyth with renal insufficiency.

118. As a direct and proximate result of defendant Rhode Island Hospital's breach of the duties described above, John Smyth, in the course of being evaluated and treated for a spinal abscess was administered 20cc of Omniscan (gadodiamide) on or about September 10, 2006, and again on or about September 27, 2006, in connection with magnetic resonance imaging (MRI) studies at Rhode Island Hospital.

119. As a direct and proximate result of defendant Rhode Island Hospital's negligence, plaintiff John Smyth has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**<u>COUNT XIII</u>**
**Lack of Informed Consent– Rhode Island Hospital**

120. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

121. As of the time that John Smyth was admitted on September 10, 2006, Rhode Island Hospital, its agents, servant and employees including, but not limited to, its physicians, radiologists, administrators, technicians, and hospital/radiology supply personnel, (collectively referred to as "Rhode Island Hospital") knew, or should have known, in the exercise of reasonable care, that the administration of gadolinium-based contrast agents, including Omniscan (gadodiamide), to patients with renal insufficiency, posed a foreseeable risk of that patient developing the serious, incurable disease known as NSF/NFD.

122. Rhode Island Hospital, owed a duty to its patients, such as John Smyth, with renal insufficiency who were candidates for the administration of gadolinium-based contrast agents, including Omniscan (gadodiamide), to take prompt, reasonable, and effective measures to alert the appropriate members of its health care community and its patients, including, but not limited to, renal patients, patients suffering from acute renal failure or chronic renal insufficiency, nephrologists and other physicians, radiologists, administrators, technicians, and hospital/radiology supply personnel, to the serious adverse health risks presented by Omniscan (gadodiamide) administration. These measures included, but are not limited to, keeping current on the medical literature, implementing procedures, guidelines, warnings and protocols that would have prohibited the administration of Omniscan (gadodiamide) to patients with renal insufficiency like John Smyth, not only once, but at least twice.

123. Notwithstanding the fact that Rhode Island Hospital knew, or should have known, of the foreseeable risks described above, Rhode Island Hospital, its agents, actual and apparent, servants, and employees breached their duty of care to John Smyth by failing to (a) timely and properly alert the nephrologists and other physicians, radiologists, administrators, technicians, and hospital/radiology supply personnel, as to the serious adverse health risks presented by Omniscan (gadodiamide) administration; (b) warn John Smyth about the serious health risks presented by the administration of Omniscan (gadodiamide); and (c) implement procedures, guidelines and protocols that would have prohibited the administration of gadolinium-based contrast agents, including Omniscan (gadodiamide), to patients like John Smyth with renal insufficiency.

124. As a direct and proximate result of defendant Rhode Island Hospital's breach of the duties described above, John Smyth, in the course of being evaluated and treated for a spinal abscess was administered 20cc of Omniscan (gadodiamide) on or about September 10, 2006, and again on or about September 27, 2006, in connection with magnetic resonance imaging (MRI) studies at Rhode Island Hospital.

125. As a direct and proximate result of defendant Rhode Island Hospital's negligence, plaintiff John Smyth has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**COUNT XIV**
**Negligence – The Miriam Hospital**

126. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

127. As of the time that John Smyth was admitted on November 3, 2006, The Miriam Hospital, its agents, servant and employees including, but not limited to, its physicians, radiologists, administrators, technicians, and hospital/radiology supply personnel, (collectively referred to as "Miriam Hospital") knew, or should have known, in the exercise of reasonable care, that the administration of gadolinium-based contrast agents, including Omniscan (gadodiamide), to patients with renal insufficiency, posed a foreseeable risk of that patient developing the serious, incurable disease known as NSF/NFD.

128. Miriam Hospital owed a duty to its patients, such as John Smyth, who was suffering from renal insufficiency who were candidates for the administration of gadolinium-based contrast agents, including Omniscan (gadodiamide), to take prompt,

reasonable, and effective measures to alert the appropriate members of its health care community and its patients, including, but not limited to, renal patients, patients suffering from acute renal failure or chronic renal insufficiency, nephrologists and other physicians, radiologists, administrators, technicians, and hospital/radiology supply personnel, to the serious adverse health risks presented by Omniscan (gadodiamide) administration. These measures included, but are not limited to, keeping current on the medical literature, implementing procedures, guidelines and protocols that would have prohibited the administration of Omniscan (gadodiamide) to John Smyth on November 3, 2006.

129. Notwithstanding the fact that Miriam Hospital knew, or should have known, of the foreseeable risks described above, Miriam Hospital, by its agents, actual and apparent, servants and employees, breached duty of care to John Smyth by failing to (a) timely and properly alert the nephrologists and other physicians, radiologists, administrators, technicians, and hospital/radiology supply personnel, as to the serious adverse health risks presented by Omniscan (gadodiamide) administration; (b) warn John Smyth about the serious health risks presented by the administration of Omniscan (gadodiamide); and (c) implement procedures, guidelines and protocols that would have prohibited the administration of gadolinium-based contrast agents, including Omniscan (gadodiamide), to patients like John Smyth with acute and then renal insufficiency.

130. As a direct and proximate result of defendant, Miriam Hospital's, breach of the duties described above, John Smyth, in the course of being evaluated and treated for suspected spinal abscesses, was administered 20cc of Omniscan (gadodiamide) on

4. Such further relief as this Court deems necessary, just, and proper.

**JURY TRIAL DEMAND**

**JOHN SMYTH AND CYNTHIA SMITH HEREBY DEMAND A TRIAL BY JURY AS TO ALL TRIABLE COUNTS OF THIS COMPLAINT AND DESIGNATE DAVID E. MAGLIO, ESQ. AS TRIAL COUNSEL.**

JOHN SMYTH and CYNTHIA SMYTH

By their attorneys,

DAVID E. MAGLIO & ASSOCIATES, P.C.

David E. Maglio, Esq. (#3459)
The Owen Building
101 Dyer Street, Second Floor
Providence, Rhode Island 02903
(401) 831-5400
(401) 833-7979 (FAX)

Dated: February 1, 2008

h:clients\smyth\MedMal\pleadings\Complaint Washington County State Court.doc

CERTIFIED MAIL

7099 3400 0008 5053 4076

FIRST CLASS MAIL

C. Becker Legal

David E. Maglio & Associates, P.C.
*Counselors at Law*
The Owen Building, 101 Dyer Street Second Floor Providence Rhode Island 02903

TO: GE Healthcare, Inc.
101 Carnegie Center
Princeton, NJ 08540

PIECE ID: BYN0105883245

DELIVER TO: BECKER, CYNTHIA

LOCATION: 348SA